UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :
                                                   :         **MEMORANDUM & ORDER**
            -against-                              :            15-CR-243 (DLI)
                                                   :
                                                   :
                                                   :
WAYNE ROBERTS-RAHIM,                               :
                                                   :
                        Defendant.                 :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On May 14, 2015, Defendant Wayne-Roberts Rahim ("Defendant") was charged by indictment with one count of passport fraud, in violation of 18 U.S.C. § 1542, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A ("§ 1028A"). (*See* Indictment, Dkt. Entry No. 7.) On October 1, 2015, the Government filed a superseding indictment, which reasserted the same two counts against Defendant, and alleged that: (1) on January 26, 2015, Defendant applied for a United States passport using a false name, false date of birth, and false Social Security number; and (2) Defendant, in connection therewith, knowingly used the "means of identification" of another person without lawful authority. (*See* Superseding Indictment ("SSI"), Dkt. Entry No. 17.)

On August 7, 2015, the Government moved *in limine* to have certain evidence admitted or precluded at trial. Specifically, the Government sought: (1) to admit evidence that Defendant applied for and obtained a fraudulent New York State driver's license, which he allegedly later used as identification when applying for a passport using another person's identifying information; (2) to admit evidence that Defendant was convicted in a separate criminal proceeding pending in this district shortly before applying for the passport, and that Defendant

1

had surrendered his legitimate passport as a condition of his release on bond in that case, subject to an explicit warning not to apply for a new passport; and (3) to preclude Defendant from making any arguments at trial, or introducing any evidence, that his use of another person's identity to apply for a passport was consented to by that person. (*See generally* Mot. *in Limine* ("Mot."), Dkt. Entry No. 13.) Defendant opposed the Government's motion *in limine*, but only as to the Government's request to admit evidence relating to his prior conviction. (*See generally* Def.'s Opp. to Mot. *in Limine* ("Def. Opp'n"), Dkt. Entry No. 14.) On September 28, 2015, at a status conference in this matter, this Court informed the parties on the record that each of the Government's three evidentiary requests was granted. This Memorandum and Order explains the reasoning for the Court's decision.

## DISCUSSION

### I. Legal Standards

#### A. *Motion in Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States,* 469 U.S. 38, 40 n. 2 (1984); *see also Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F.Supp. 276, 283 (S.D.N.Y.1996). Evidence generally should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998); *Nat'l Union Fire Ins. Co.,* 937 F.Supp. at 287. Courts considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co.,* 937 F.Supp. at 287. Alternatively, a judge is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling," particularly in the

event that, "when the case unfolds . . . the actual testimony differs from what was contained in the [movant's] proffer." *Luce,* 469 U.S. at 41-42.

### B. Federal Rule of Evidence 404(b)

Rule 404(b) of the Federal Rules of Evidence prohibits evidence of other bad acts or crimes to demonstrate a defendant's propensity to commit similar acts or crimes. *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") However, Rule 404(b) provides that such evidence may be admissible for other purposes, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Second Circuit has adopted an "inclusionary approach" with respect to Rule 404(b) evidence, "which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002)) (citation and internal quotation marks omitted). In evaluating a district court's decision to admit Rule 404(b) evidence, the Second Circuit considers whether: "(1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *Garcia*, 291 F.3d at 136; *see also Edwards*, 342 F.3d at 176.

Notably, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United*

*States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citation omitted). Evidence meeting these criteria is deemed to fall outside the scope of Rule 404(b), and, therefore, is not subject to the limitations on admissibility imposed by that rule. The rationale underlying this principle is that, in certain circumstances, uncharged criminal activity and the charged offense are so closely intertwined that they reasonably cannot be disentangled, for example where precluding evidence of other bad acts "would leave a chronological or conceptual void in the story of the crime." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.20[2][c] (2d ed. 2015).

Finally, relevant evidence of other bad acts, like all relevant evidence, is subject to the balancing test for admissibility set forth in Rule 403 of the Federal Rules of Evidence. That rule provides as follows: "The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. Application

### A. By Failing To Oppose The Government's Motion, Defendant Has Waived Certain Objections

As an initial matter, in his opposition, Defendant contests only one of the three evidentiary rulings requested by the Government. Specifically, Defendant does not challenge the Government's requests: (1) to admit evidence that Defendant applied for and obtained a fraudulent New York State driver's license; and (2) to preclude Defendant from making any arguments at trial, or introducing any evidence, that his use of another person's identity to apply for a passport was consented to by that person. (*See* Def. Opp'n at 1-4.) Defendant also indicates in his opposition that he does not intend to file any pretrial evidentiary motion of his

4

own. (*See Id.* at 1.) Accordingly, Defendant has waived any objection he might later attempt to raise regarding the admission or preclusion of evidence pursuant to the above two requests, and such waiver will not be excused except for good cause. *See United States v. Klump*, 536 F. 3d 113, 120 (2d Cir. 2008) ("[T]he failure to assert a particular ground in a pre-trial suppression motion operates as a waiver of the right to challenge the subsequent admission of evidence on that ground.") (quoting *United States v. Schwartz*, 535 F.2d 160, 163 (2d Cir. 1976)).[1] *See also* Fed. R. Crim. P. 12(c)(3). Notwithstanding this waiver, the Court has considered the merits of the Government's motion *in limine*, which is granted in its entirety for the reasons that follow.

### B. Evidence Relating To Defendant's Allegedly Fraudulent Driver's License, And The Manner In Which He Obtained It, Is Admissible

The Government alleges that, on May 13, 2014, Defendant submitted a fraudulent application to the New York State Department of Motor Vehicles ("DMV") to obtain a New York State driver's license. (Mot. at 2-3.) Defendant allegedly completed the application using the name of his half-brother, Jahmiel Siraj Cuffee ("Cuffee"), but sat for his own photograph. (*See Id.* at 3.) Defendant then allegedly signed the application as "Jahmiel Cuffee," and received a driver's license bearing his own picture, but Cuffee's name. (*Id.*)

According to the Government, Defendant subsequently brought that license to a United States Post Office on January 26, 2015, and used it as a form of identification to apply for a passport using a false name, date of birth, and Social Security number. (*Id.*) As he did when applying for the driver's license, Defendant allegedly put Cuffee's name on the passport application and signed it as "Jahmiel Cuffee," in a signature nearly identical to the one found on

---

[1] This proposition once was embodied by Rule 12(e) of the Federal Rules of Criminal Procedure, which provided that arguments required to be raised in a pretrial motion, including those regarding the suppression of evidence, were "waived" if not so raised. Amendments to the Rules in 2014 deleted Rule 12(e), but the waiver effect of failing to timely seek the suppression of evidence is implicit in the new text of Rule 12(c)(3), which provides: "If a party does not meet the deadline for making a Rule 12(b)(3) motion [including a motion to suppress evidence], the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."

the DMV application. (*Id.*) Defendant also purportedly used Cuffee's birth certificate as proof of citizenship. (*Id.*) However, for the required photograph, Defendant allegedly submitted two photos of himself along with the passport application. (*Id.*) Subsequently, facial recognition technology notified the United States Department of State that those photographs matched a passport already issued in Defendant's own name. (*Id.*)

The Court finds that evidence of the driver's license, and the manner in which Defendant allegedly obtained it, is admissible at trial. That evidence does not concern other bad acts within the meaning of Rule 404(b), as it constitutes part of the "same transaction or series of transactions as the charged offense . . . is inextricably intertwined with the evidence regarding the charged offense . . . [and] is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44. The driver's license allegedly was instrumental in enabling Defendant to apply for a passport in a similarly fraudulent manner, using the same false identity. Therefore, evidence relating to the license fills a "conceptual void in the story of the crime," *Weinstein's Federal Evidence* § 404.20[2][c], because it potentially explains how Defendant began representing Cuffee's name and personal information as his own. In other words, obtaining the license was an important, if not essential, precursor step in Defendant's alleged commission of the charged offenses.

Furthermore, evidence relating to Defendant's application for the license is "inextricably intertwined" with the evidence regarding the charged offenses. *See Carboni*, 204 F.3d at 44. For example, because there is no video evidence directly tying Plaintiff to the passport application, the Government intends to prove that Plaintiff was the applicant by relying, in part, on the nearly identical signatures found on the DMV and passport applications. (*See* Mot. at 4.) In addition, the Government intends to argue that the driver's license was among the means of identification

of another person that Plaintiff used in connection with the alleged passport fraud, in violation of § 1028A. (*See Id.* at 5.) As such, the driver's license is not just intertwined with the evidence relating to the charged offenses, but, in fact, is direct evidence of those offenses. Faced with essentially the same facts, other courts have upheld the admissibility of prior fraudulent statements to prove passport fraud. *See, e.g.*, *United States v. Perez-Rodriguez*, 2009 WL 104315, at *3-4 (N.D. Ill. Jan. 14, 2009) (admitting evidence of false statements in Social Security card application as "inextricably intertwined" with charged offense of passport fraud, where Social Security card was used to apply for passport.)

Evidence of the driver's license also is admissible under Rule 404(b) for purposes other than proving Defendant's criminal propensity. To satisfy the *mens rea* elements of the charged offenses, the Government must prove that Defendant "willfully and knowingly" made false statements on a passport application, and "knowingly" used or possessed the means of identification of another person in connection with such conduct. *See* 18 U.S.C. § 1542; 18 U.S.C. § 1028A. Evidence that Defendant applied for and obtained a driver's license that he later used to apply for a passport under the same false identity is highly probative of Defendant's knowledge and intent when allegedly committing the charged offenses. *See, e.g., United States v. Tsekhanovich*, 251 F. App'x 706, 707 (2d Cir. 2007) ("[E]vidence of prior crimes—especially crimes nearly identical to those presently charged—may be offered for the proper purpose of proving the defendant's knowledge or absence of mistake."); *see also United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other bad acts "depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (internal quotation marks omitted). Furthermore, this evidence is probative of Defendant's preparation for the charged offenses, and that these offenses were not the result of accident, mistake, or

7

ignorance. *See Perez-Rodriguez*, 2009 WL 104315, at *3-4; *see also United States v. Minkowitz*, 104 F.3d 350, at *2 (2d Cir. 1996) (unpublished).

Finally, although some prejudice to Defendant could result from admitting evidence relating to the driver's license, the Court finds that the significant probative value of such evidence is not substantially outweighed by the danger of its unfair prejudice. *See, e.g., United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (prior bad acts evidence may not be unduly prejudicial where it does not "involve conduct any more sensational or disturbing" than the charged offense) (citation omitted); *see also* Fed. R. Evid. 403. Moreover, any prejudice may be averted by a proper limiting instruction to the jury by the Court. *See Garcia*, 291 F.3d at 136. In sum, although evidence relating to the driver's license, and the manner in which Defendant allegedly obtained it, would be admissible under Rule 404(b), that evidence is admissible even outside the scope of Rule 404(b) because it is inextricably intertwined with the charged offenses and is part of the *res gestae*.

### C. Evidence That Defendant Was Convicted And Surrendered His Passport In Another Criminal Proceeding Is Admissible

In March 2014, Defendant was released on bail following his arrest in connection with *United States v. Johnson*, 13-cr-0092(ENV7) (E.D.N.Y.), an unrelated criminal case against Defendant and other persons concurrently pending in this district. (*See* Mot. at 2-3.) As a condition of his release, Defendant surrendered his passport to pretrial services on March 28, 2014, and explicitly was warned not to apply for a new passport. *See Johnson*, Dkt. Entry No. 94. On January 16, 2015, Defendant appeared before the Honorable Eric N. Vitaliano, United States District Judge, and pled guilty to Count One of the indictment against him in *Johnson*. *See Id.*, Dkt. Entry No. 133. Ten days later, while awaiting sentencing in *Johnson*, Defendant allegedly applied for the passport at issue in this case. (*See* Mot. at 3.)

The Government seeks to introduce evidence regarding four specific facts: (1) Defendant was at liberty on bond when he allegedly applied for that passport; (2) he had surrendered his legitimate passport as a condition of his release on bail; (3) he explicitly was warned not to apply for a new passport; and (4) he allegedly applied for the new passport shortly after his conviction in *Johnson*, while awaiting sentencing. The Government argues that, because these facts "complete the story" of the crime just like the facts pertaining to Defendant's allegedly fraudulent driver's license, they should not be considered evidence of other bad acts within the scope of Rule 404(b). (*See* Mot. at 7.) However, just because evidence gives narrative context to the charged offenses does not necessarily mean it is so closely intertwined with those offenses that it should be considered beyond the scope of Rule 404(b). *See, e.g., United States v. Currier*, 821 F.2d 52, 55 (2d Cir. 1987). In this instance, the Court concludes that evidence relating to the above facts more appropriately is admitted pursuant to Rule 404(b).

It follows that such evidence may be admitted for any purpose other than demonstrating Defendant's criminal propensity. Here, the above facts are highly probative of a possible motive for the charged offenses: Defendant had surrendered his own passport, could not apply for a new one in his own name, and possibly needed one to avoid his impending sentence in *Johnson*. That possible motive, which the Government intends to argue at trial (*see* Mot. at 7), bears heavily on Defendant's knowledge and intent when allegedly committing the charged offenses. *See United States v. MacPherson*, 424 F.3d 183, 185 n.2 (2d Cir. 2005) (knowledge and intent may be inferred from motive). Furthermore, statements allegedly made by Defendant during an interrogation indicate that he may attempt to argue at trial that it was not him, but Cuffee, that applied for the passport, or that some other inadvertence resulted in the passport application containing false identifying information. As such, the fact that Defendant had surrendered his

9

passport as a condition of his release on bail, and explicitly was warned not to apply for a new passport, could be highly relevant to establishing an absence of mistake.

While evidence of Defendant's bail status and prior conviction may result in some prejudice to Defendant at trial, the Government seeks to admit evidence only of the fact of Defendant's bail status and conviction, not the nature of his crime or any of the facts of the underlying conspiracy at issue in *Johnson*. The danger of unfair prejudice at trial will be further mitigated by an appropriate limiting instruction to the jury, warning the jurors not to infer Defendant's guilt in this case from his prior conviction, and identifying the narrow purposes for which the Rule 404(b) evidence can be considered. *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). Accordingly, the Court finds that, on balance, the probative value of this evidence is not substantially outweighed by the danger of its unfair prejudice.

Defendant contends that his conviction in *Johnson* is not probative of a motive for the charged offenses, because there is no factual basis to the Government's theory that he sought a passport in order to flee New York. (*See* Def. Opp'n at 2-3.) Defendant points out that he remained in New York, while out on bail, for almost ten months before allegedly applying for the passport at issue in this case. (*See Id.*) Nevertheless, Defendant's arguments are unavailing. The close temporal nexus—a mere ten days—between Defendant's conviction in *Johnson* and his submission of an allegedly fraudulent passport application supports the Government's theory that the two events were connected. That connection is what the Government seeks to establish, not necessarily that Defendant intended to flee New York. (*See* Gov't Reply in Supp. of Mot. *in Limine*, Dkt. Entry No. 15, at 5.) Moreover, the fact that Defendant was at liberty on bail and was prohibited from applying for a new passport is highly probative of his knowledge and intent.

Accordingly, the Court finds that the evidence the Government seeks to introduce is admissible, pursuant to Rule 404(b), to prove motive, intent, knowledge, and/or absence of mistake.

### D. Defendant Is Precluded From Making Any Arguments At Trial, Or Introducing Any Evidence, That He Used Cuffee's Identity With His Consent

The Government contends that Defendant's post-arrest statements to law enforcement officers indicate that he may attempt to argue at trial that he did not commit aggravated identity theft because he used Cuffee's identity with his consent. The Government seeks to preclude Defendant from making any argument or introducing any evidence to that effect, as the Government contends that consent is not a defense to aggravated identity theft under § 1028A. That statute, captioned as "Aggravated identity theft," provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). Recently, a number of courts have examined whether § 1028A is violated even when the defendant used another person's identifying information with that person's consent. The issue has not yet been addressed by the Second Circuit.

This United States Supreme Court has not yet ruled on the issue, though it has been the subject of recent petitions for writs of *certiorari*. *See, e.g., United States v. Bercovich*, 2015 WL 5091847 (9th Cir. Aug. 31, 2015) (petition for writ of *certiorari* pending); *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015), *cert. denied* 2015 WL 5084628 (Oct. 5, 2015). The Second Circuit also has yet to rule on the issue, but may have the opportunity to do so in a case pending appeal. *See United States of America v. Naranjo, Sr., et al.*, Dkt. Nos. 14-1348, 14-1406, 14-2503. Nevertheless, every single Court of Appeals that has considered the issue, except for one, has ruled that § 1028A is violated whenever the defendant uses another person's identity

in furtherance of one of the enumerated crimes, regardless of whether the other person consented to the use.[2] That majority view is shared by the district courts in this Circuit that have ruled on the issue.[3]

These decisions have focused primarily on the "without lawful authority" language of § 1028A, reasoning that consent from another person to use his or her identity does not confer "lawful authority" upon the defendant to use that identity for an unlawful purpose. *See, e.g., United States v. Lumbard*, 706 F.3d 716, 723-25 (6th Cir. 2013). To be sure, that construction yields an interpretive curiosity, insofar as a defendant need not have "stolen" anyone's identity to be convicted of aggravated identity theft. *See United States v. Reynolds*, 710 F.3d 434, 436 (D.C. Cir. 2013) (holding that the Government is not required to prove the defendant "stole" another person's identity to establish a violation of § 1028A.) However, it is a well settled principle of statutory construction that a statute's caption cannot override the plain meaning of its operative text. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute . . . cannot limit the plain meaning of the text.") (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947)). As several Courts of Appeals have explained, despite being captioned as "Aggravated identify theft," § 1028A is void of any language requiring that the "means of identification" at issue was "stolen" by the defendant.[4] *See, e.g., Reynolds*, 710 F.3d at 436; *United States v. Hurtado*, 508 F.3d 603, 607-08 (11th Cir. 2007). Therefore, rather

---

[2] *See Osuna-Alvarez*, 788 F.3d 1183; *United States v. Otuya*, 720 F.3d 183 (4th Cir. 2013); *United States v. Lumbard*, 706 F.3d 716 (6th Cir. 2013); *United States v. Ozuna-Cabrera*, 663 F.3d 496 (1st Cir. 2011); *United States v. Hurtado*, 508 F.3d 603 (11th Cir. 2007), *abrogated on other grounds*, 129 S. Ct. 1886 (2009); *United States v. Hines*, 472 F.3d 1038 (8th Cir. 2007); *see also United States v. Reynolds*, 710 F.3d 434 (D.C. Cir. 2013).

[3] *See, e.g., United States v. Cwibeker*, 2015 WL 459315, at *3-5 (E.D.N.Y. Feb. 2, 2015); *United States v. Ivanova*, 2014 U.S. Dist. LEXIS 39641, at *8-19 (S.D.N.Y. Mar. 19, 2014.)

[4] Despite omitting any reference to "stolen" or "theft" in §1028A(a)(1), Congress inserted "stolen" three times in the preceding statutory section that enumerates eight identity fraud violations. S*ee* 18 U.S.C. § 1028(a). Notably, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 30 (1997) (citation and internal quotation marks omitted).

than applying narrowly to uses of another person's identity without consent, § 1028A more broadly encompasses uses "without lawful" authority. *See United States v. Retana*, 641 F.3d 272, 274 (8th Cir. 2011).

Only the Court of Appeals for the Seventh Circuit seemingly has taken a conflicting position, holding in *Spears v. United States* that § 1028A requires the lack of consent of the person whose identity was used in order to establish a violation: "Section 1028A, we hold, uses 'another person' to refer to a person who did not consent to the use of the 'means of identification.'" 729 F.3d 753, 758 (7th Cir. 2013) (*en banc*). Thus, unlike the other Courts of Appeals that have adopted the majority view of § 1028A based on the statutory meaning of "without lawful authority," the Seventh Circuit premised its holding in *Spears* on the meaning of "another person." That distinction is explained, in part, by the somewhat unique facts of *Spears*. In *Spears*, the defendant was convicted under § 1028A for making a counterfeit handgun permit and transferring it to Tirsah Payne, whose name and birthdate appeared on the ersatz permit with her consent. *See Id.* at 744-55. Thus, the only transfer of a "means of identification" occurred when the defendant transferred Payne's own information to her. As the Seventh Circuit reasoned, under such circumstances, § 1028A was not violated because no identifying information of "another person" was transferred. *See Id.* at 755-56, 758.

Here, the facts are different from those in *Spears*. Defendant is not accused of transferring Cuffee's identifying information to Cuffee, but rather is alleged to have used Cuffee's identity in connection with his own application for a passport. If, as the Government suggests, Defendant intends to argue that he had Cuffee's consent to use his identity when applying for the passport, the circumstances of this case more closely resemble those in *United States v. Osuna-Alvarez*. *See generally* 788 F.3d 1183 (9th Cir. 2015). In *Osuna-Alvarez*, the

defendant was detained when attempting to transport drugs across the border from Mexico into the United States using his twin brother's name and passport. *See Id.* at 1184. Among other offenses, the defendant was charged with aggravated identity theft. *See Id.* Despite concluding that the twin brother was complicit in the defendant's use of the passport, following a bench trial the district court found the defendant guilty of violating § 1028A. *See Id.* On appeal, the defendant argued that, as a matter of law, he could not have violated § 1028 because he used his brother's passport with his consent, rather than "without lawful authority." *See Id.* at 1185. Noting that its sister circuits had "universally rejected" that argument, the United States Court of Appeals for the Ninth Circuit held that § 1028A "does not require theft as an element of the offense." *Id.* Thus, the defendant violated § 1028A by using his brother's passport to falsely identify himself as a United States citizen, and regardless of whether his brother consented to that use such use was "without lawful authority" within the meaning of the statute.

Here, the Government relies on the construction of § 1028A adopted in *Osuna-Alvarez*, which reflects the majority view among the Court of Appeals, to argue that Defendant should be precluded from introducing evidence that he had Cuffee's consent to use his identity. The Government contends that such evidence would only mislead or confuse the jury, as it does not provide a defense to the violation of the statute. (*See* Mot. at 11.) The Court agrees. Based upon the plain language of § 1028A, Cuffee's consent or non-consent has no bearing on whether Defendant used his identity "without lawful authority." Thus, evidence relating to Cuffee's complicity in Defendant's use of his identity arguably is irrelevant, and, therefore, inadmissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.") Moreover, such evidence is inadmissible because it may tend to confuse the issues and mislead the jury to an extent substantially outweighing its probative value. *See* Fed. R. Evid. 403*; see also United States v.*

*Ware*, 399 F. App'x 659, 661-62 (2d Cir. 2010) (district court did not abuse discretion in precluding evidence regarding defense that was not legally available, as evidence was "irrelevant" and would "mislead or confuse the jury."); *United States v. Simpson*, 929 F. Supp. 2d 177, 198 (E.D.N.Y. Mar. 8, 2013) (where court already ruled as a matter of law that defendant did not derive citizenship from his mother, permitting defendant to introduce statements to the contrary by immigration officials for impeachment purposes would unduly confuse the issues and mislead the jury.); *United States v. Carneglia*, 2009 WL 185725, at *1-2 (E.D.N.Y. Jan. 27, 2009).

This Court is mindful that evidence of particular importance to a defense theory generally should not be precluded under Rule 403 unless the risk of confusion is "overwhelming." *See United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995). Here, however, Defendant has given no indication that the evidence to be precluded is important to his defense.[5] Even if it were important, the Court finds the risk of confusion sufficiently overwhelming to justify preclusion of the evidence, particularly in light of the fact that it does not provide a valid defense to a violation of § 1028A. *See United States v. Morel*, 751 F. Supp. 2d 423, 433 (E.D.N.Y. 2010) (evidence carried "overwhelming" risk of misleading and confusing jury where it was likely to cause jury to "draw improper inferences.")

---

[5] Indeed, as already discussed, Defendant did not oppose this portion of the Government's motion *in limine*, and, therefore, waived any objection to the preclusion of this evidence.

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is granted in its entirety, subject to appropriate limiting instructions where warranted.

SO ORDERED.

Dated: Brooklyn, New York
October 22, 2015

>                             /s/
>                     DORA L. IRIZARRY